```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/7/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VLADIMIR M. GOROKHOVSKY, and
IGOR KAIUROV,

                Plaintiffs,

-against-

ELEANORA STEFANTSOVA,

                Defendant.

1:19-cv-08101-MKV

ORDER OF DISMISSAL

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiffs are recently reunited friends who brought this *pro se* action against Defendant, a Russian businesswoman, alleging that she fractured their friendship through slander, as a part of a scheme to isolate the two and then steal their money. Plaintiffs assert two claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in addition to various state law claims. For the reasons that follow, Plaintiffs' renewed Motion for Default Judgment is denied, and all claims are dismissed *sua sponte*.

## FACTUAL BACKGROUND[1]

    The Amended Complaint contains fourteen causes of action and nearly 300 paragraphs. But the allegations that matter are few.

    Vladimir Gorokhovsky is a lawyer and former businessman who received clients and business referrals from his friend Igor Kaiurov.[2] AC ¶¶ 20-30. One of these referred clients was

---

[1] The following facts are drawn from Plaintiffs' Amended Complaint. [ECF No. 11]. As it must, the Court accepts as true all of the factual allegations of the non-defaulting party, and draws all reasonable inferences in Plaintiffs' favor. *See Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014).

[2] While Plaintiff Gorokhovsky is apparently a licensed attorney, he is not admitted in the Southern District of New York or in the State of New York (according to the New York State Office of Court Administration Website, https://iapps.courts.state.ny.us/attorneyservices/search?1) and proceeds *pro se* in this action. AC ¶ 65.

1

Eleanora Stefantsova, who, in 2008, wired Gorokhovsky "an approximate sum of $60,000 from her bank in China" as "a fixed retainer to pursue her defamation claim" against her business partner. AC ¶¶ 31-38. Gorokhovsky evaluated Stefantsova's defamation claim until she decided not to further pursue the action, at which time she asked Gorokhovsky to "return to her [the] unused portion of [the] fixed retainer." AC ¶¶ 40, 42. On March 31, 2008, Gorokhovsky "provided [the] final bill and accounting for his services to Stefantsova and wired . . . $42,204.90 back to [her]," through a company that she controlled called North-West Logistics Limited Inc. AC ¶¶ 43, 48, 105. Shortly thereafter, Kaiurov stopped communicating with Gorokhovsky and avoided contact with him, putting a pause on their long-running friendship. AC ¶ 46.

Years later, Stefantsova "induced [Kaiurov] to invest $650,000 via verbal agreement in one of her real estate projects."[3] AC ¶ 127. At some point "during 2011-2012 Stefantsova liquidated said real estate project and devised significant profit from such sale," AC ¶ 283, but she "refused to repay" Kaiurov "his investments . . . essentially stealing his monies." AC ¶ 78. In 2014, Stefantsova's then-husband repaid $200,000 to Kaiurov, and, in 2018, Stefantsova shipped Kaiurov some furniture, supposedly in lieu of payment. AC ¶¶ 79, 261. Stefantsova later moved "the sum of $650,000 . . . in international cross [border] commerce," from China to New York. AC ¶ 81.

Gorokhovsky and Kaiurov reunited in March 2019. At that time, Kaiurov explained that he had cut off contact with Gorokhovsky years earlier because Stefantsova had told him that Gorokhovsky stole $40,000 from her. AC ¶ 47. Plaintiffs also discussed Kaiurov's verbal

---

[3] The Amended Complaint is riddled with internal inconsistencies. It suggests that Kaiurov invested with Defendant at some point in 2013, AC ¶¶ 57, despite alleging that the real estate project was liquidated in 2011 or 2012, AC ¶¶ 258, 283, and it provides inconsistent allegations concerning the amount that Kaiurov invested in the real estate project—varying between $550,000 (*see* AC ¶ 57) and $650,000 (*see* AC ¶ 127).

2

agreement to invest in Stefantsova's real estate project and concluded that Stefantsova had spread the prior falsehood as part of a "plan or scam" to isolate Kaiurov from Gorokhovsky so that she could take advantage of Kaiurov. AC ¶¶ 70, 94.

## PROCEDURAL HISTORY

Plaintiffs commenced this *pro se* action by filing a complaint on August 29, 2019. [ECF No. 1]. Plaintiffs subsequently filed an Amended Complaint [ECF No. 11] ("AC"), and thereafter moved for default judgment [ECF No. 39]. On February 16, 2022, the Court issued an order to show cause "why each of the fourteen claims asserted in the Amended Complaint are not time-barred or otherwise fail to state a claim upon which relief can be granted." [ECF No. 46]. The Order further stated that "Plaintiffs' Motion for Default Judgment is denied without prejudice, subject to renewal in connection with the supplemental submissions." [ECF No. 46]. The Plaintiffs timely filed the supplemental submissions [ECF Nos. 47] ("Gorokhovsky Ltr."); [EF No. 48] ("Kaiurov Ltr."). While Plaintiffs did not technically renew their motion for a default judgment, the Court is deeming the supplemental submissions as such given Plaintiffs' *pro se* status.

## LEGAL STANDARD

### I.     DEFAULT JUDGMENT

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." *Vt. Tedy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "Rule 55 provides a two-step process for the entry of judgment against a party who fails to defend: first, the entry of default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* The second step, entry of a default

3

judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Id.*

The first step, entry of a default, is governed by Rule 55(a), which provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The "typical Rule 55 case [is one] in which a default has entered because a defendant failed to file a timely answer." *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 64 (2d Cir. 1986). That is what happened here. Stefantsova, after having been served [ECF No. 23], failed to respond to the complaint or otherwise defend against the action. Accordingly, the Clerk of the Court issued a Certificate of Default, certifying that Stefantsova "has not filed an answer or otherwise moved with respect to the complaint herein." [ECF No. 29].

"Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded." *Asesoral Bus. Partners LLC v. Seatech Worldwide Corp.*, No. 19-cv-11512, 2021 WL 918256, at *2 (S.D.N.Y. Mar. 10, 2021). Once a party is in default, "a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014). "But because a party in default does not admit conclusions of law, a district court must determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law." *Seatech Worldwide*, No. 19-cv-11512, 2021 WL 918256, at *2 (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

4

Where, as here, a complaint is filed by *pro se* plaintiffs, the complaint should be held to a less stringent standard. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). In other words, courts must interpret such pleadings "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). "Nevertheless, *pro se* plaintiffs remain subject to the same general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *De Santis v. City of New York*, No. 10-cv-3508, 2011 WL 4005331, at *3 (S.D.N.Y. Aug. 29, 2011).

Finally, district courts may dismiss a complaint *sua sponte* on statute of limitations grounds where "the facts supporting the statute of limitations defense are set fort in the papers plaintiff himself submitted." *Leonhard v. United States*, 633 F.2d 599, 60 n.11 (2d Cir. 1980).

## II.   RICO CLAIMS

To state a plausible civil claim for violation of RICO, Plaintiffs' pleading "must demonstrate . . . that while employed by or associated with an enterprise engaged in interstate or foreign commerce, and through the commission of at least two predicate acts constituting a 'pattern of racketeering,' the defendant directly or indirectly conducted or participated in the conduct of the affairs of such enterprise." *Gross v. Waywell*, 628 F. Supp. 2d 475, 485 (S.D.N.Y. 2009) (citing 18 U.S.C. § 1962(c)). A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

In addition, to state a cause of action for RICO, the "pattern of racketeering activity" must satisfy a relatedness requirement. "The requirement of 'relatedness' embodies two different concepts. The racketeering acts must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)." *United States v. Minicone*, 860 F.2d

5

1099, 1106 (2d Cir. 1992) (quoting *United States v. Long*, 917 F.2d 691, 697 (2d Cir. 1990)). "Vertical relatedness means that the acts are related to the enterprise." *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010). "To show that the predicate acts are vertically related to the RICO enterprise, the [plaintiff] must establish (1) that the defendant 'was enabled to commit the predicate offenses solely by virtue of [her] position in the enterprise or involvement in or control over the affairs of the enterprise,' or (2) that 'the predicate offenses are related to the activities of that enterprise.'" *Rosenson v. Mordowitz*, No. 11-cv-6145, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012) (quoting *United States v. Daidone*, 471 F.3d 371, 375 (2d Cir. 2006)).

Finally, "plaintiffs bringing civil RICO claims must demonstrate that they each suffered an injury proximately caused by the defendants' violation of § 1962." *4 K & D Corp., v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 540 (S.D.N.Y. 2014) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). In particular, "[w]here a RICO violation is predicated on acts sounding in fraud, a plaintiff must allege that the defendant's acts were not only the 'but for' cause of plaintiff's injury, but the proximate cause as well, necessitating 'some direct relation between the injury asserted and the injurious conduct alleged,'; '[a] link that is too remote, purely contingent, or indirect is insufficient.'" *Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491, 503-04 (S.D.N.Y. 2012) (quoting *Hemi Grp. v. City of New York*, 559 U.S. 1, 9 (2010).[4]

---

[4] Where, as here, plaintiffs predicate a RICO claim on allegations of fraud, they must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Wolhendler v. Goldberg*, No. 19-cv-457, 2020 WL 5658790, at *2 (E.D.N.Y. Sept. 23, 2020) (citing *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004)).

**DISCUSSION**

I.     **RICO CLAIMS**

Plaintiffs allege that "during [the] last 25 years [Stefantsova] was and still is engaged in [a] scheme of various racketeering activities to materialize personal financial gains through the pattern of racketing [sic] activities by effectuating her control and dominion over several different business enterprises." AC ¶ 99. The alleged racketeering activities include slandering Gorokhovsky, thereby temporarily interrupting his friendship with Kaiurov and damaging his business relationships (AC ¶¶ 101-04); stealing the $40,000 Gorokhovsky had paid to North-West Logistics Limited Inc. while she exerted control and dominion over that company (AC ¶ 105); defrauding Kaiurov of his investment in the real estate project and wiring those stolen funds from China to the United States (AC ¶ 106-08); defrauding the United States by submitting false information to obtain an immigration visa (AC ¶ 109); and defrauding several non-party investors of their investment in Curations Limited LLC while she exerted control and dominion over that company and fraudulently obtained ownership of it (AC ¶ 110-12).

These allegations suffer from multiple defects. First, much of this conduct is not alleged to have proximately caused an injury to either plaintiff. Plaintiffs do not allege to have had an interest in the looted corporation; nor do they claim to be among the defrauded investors in the LLC. The alleged immigration fraud against the United States is similarly remote, even to the most ardent patriot. Plaintiffs thus have no standing to challenge this conduct.

Second, the only conduct that was alleged to have been a proximate cause of any injuries suffered by plaintiffs was the purported defamation and the purported fraud related to the real estate project. But that conduct was all performed by Stefantsova alone. There was no allegation of a group, association, or organization; in short, accepting Plaintiffs' allegations as true, there was no enterprise. The Amended Complaint does allege that Stefantsova defamed

7

Gorokhovsky "while exerting her control and dominion over company North-West Logistics Limited Inc.," AC ¶ 105, and "the Supreme Court has established that a corporation, even if wholly owned by a single individual, may be an enterprise for the purpose of RICO," *Rosenson v. Mordowitz*, No. 11-cv-6145, 2012 WL 3631308, at *9 (S.D.N.Y. Aug. 23, 2012) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001)).  But anyone can defame anyone.  Plaintiffs must allege that Stefantsova was able to commit the offense "'solely' by virtue of [her] position" within the corporation.  *Id.* at *10 (quoting *United States v. Daidone*, 471 F.3d 371, 375 (2d Cir. 2006)).  That they have not done.

Because Plaintiffs' RICO claims fail to state a claim, the Court cannot grant default judgment on those claims but must instead dismiss the claims *sua sponte*.  *See Graham v. HSBC Mortg. Corp.*, No. 18-cv-4196, 2022 WL 1266209, at *4 (S.D.N.Y. Apr. 28, 2022) ("[I]f a plaintiff fails to state a claim, a court cannot enter default judgment in plaintiff's favor— irrespective of the defendant's failure to appear—and must instead dismiss the claim.").

## II.    STATE LAW CLAIMS

The twelve state law claims can be placed in two buckets: first, the defamation-related claims brought by Gorokhovsky; and second, the breach-of-contract-related claims brought by Kaiurov.  But the claims in both buckets fail for the same reason: they are all untimely.

### A.  *Gorokhovsky's Claims*

Gorokhovsky brings various claims predicated on the allegedly defamatory remarks made by Stefantsova between 2008 and 2009.[5]  AC ¶ 139.  While the applicable statute of limitations

---

[5] Gorokhovsky brings claims for common law defamation (Count Three), common law slander (Count Four), the tort of false light privacy (Count Five), the tort of injurious falsehood (Count Six), and prima facie tort (Counts Seven and Eight).  Notably, however, the "false light/invasion of privacy is not a cause of action in New York." *Wright v. Belafonte*, No. 12-CIV-7580, 2014 WL 1302632, at *2 (S.D.N.Y. Mar. 31, 2014), and Count Five is dismissed on that ground.

for these claims depends on how the claims are read, even reading the amended complaint in the light most favorable to Gorokhovsky, as required, the Court finds that his claims are all time-barred.

Under New York law, which allegedly governs Gorokhovsky's claims (*see* AC ¶ 207), "[i]n determining which statute of limitations is applicable to a cause of action, it is the essence of the action and not its mere name that controls." *Koplinka-Loehr v. Cty. of Tompkins*, 139 N.Y.S.3d 661, 664 (3d Dep't 2020)). New York's one-year statute of limitations for defamation claims applies where the plaintiff "seek[s] damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation." *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (second alteration in original). "New York courts treat harm stemming from injury to reputation as sounding in defamation, and do not recognize separate torts as additional causes of action." *Goldman v. Barrett*, 733 F. App'x 568, 570 (2d Cir. 2018) (citing *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 458 (1967)).

By contrast, for tortious interference claims, where the "gravamen of [the] complaint is economic injury, rather than merely reputational harm," *Amaranth LLC v. J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489, 494 (1st Dep't 2009), a three-year statute of limitations applies. Put differently, the First Department has emphasized that where a "complaint does not rely merely on generalized reputational harm," and instead relies on economic injury, the claim "sounds in tortious interference." *Id.* at 495.

In this case, it makes no difference whether the governing statute of limitations is one year for a defamation claim or three years for a tortious interference claim. For either claim, the statute of limitations runs from the time the allegedly defamatory statements are made, or when the alleged interference first caused plaintiff to sustain damages, and *not* when the plaintiff first

learned of the defamatory remarks or of each element of his claim. *See Papeskov v. Brown*, No. 97-cv-5351, 1998 WL 299892, at *6 (S.D.N.Y. June 8, 1998) ("Under New York State law, the statute of limitations for defamation . . . runs from the time the allegedly defamatory statements are made, not from when the plaintiff learns of them."); *Red Mountain Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 176-77 (S.D.N.Y. 2021) ("There is no 'discovery rule' applicable to tortious interference claims that would delay the statute of limitations clock until plaintiff learns or should have learned of each element of its claim." (citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993)). This defeats Gorokhovsky's only argument on timeliness, which is that he did not learn of the allegedly defamatory remarks—first uttered in 2008 or 2009—until a decade after they were made. Gorokhovsky Ltr. at 2-3.

Reading the Amended Complaint in the light most favorable to Gorokhovsky, the statute of limitations on his claims ran at some point in 2012—seven years before he initiated this action. As a result, Gorokhovsky's defamation-related claims must be dismissed.

### B. *Kaiurov's Claims*

Kaiurov brings several separate claims related to his real estate investment with Stefantsova. Specifically, Kaiurov alleges that he invested hundreds of thousands of dollars in a real estate project, "[t]hat sometime during the year of 2012 Stefantsova liquidated and sold said real estate project and devised significant profit from such sale in unknown sums." AC ¶ 258, and that Stefantsova did not pay him the money he was owed when the sale took place, AC ¶¶ 78, 130, 260, 266, 285. The primary claim Kaiurov advances on this front is one for breach of contract, which is subject to a six-year statute of limitations under New York law.[6] *See* N.Y.

---

[6] Kaiurov also brought claims for common law fraud (Count Nine), prima facie tort (Count Eleven), unjust enrichment (Count Twelve), fraud in the inducement (Count Thirteen), imposition of resulting or equitable trust (Count Fourteen). Notably, however, a request for a trust is a remedy, not a cause of action, under New York law. *See Gary Friedrich Entm't, LLC v. Marvel Entm't, Inc.*, 713 F. Supp. 2d 215, 222 (S.D.N.Y. 2010) (citing *Bertoni v.*

10

C.P.L.R. § 213. As a result, the question is whether the alleged breach occurred within six years of August 29, 2019, when Plaintiffs filed the complaint in this action. Even assuming the claims relate back to the original complaint filed on August 29, 2019, the claims are untimely.

"Under New York law, where the claim is based upon money due and owing under a contract, the statute of limitations begins to run when payment is due." *Lim v. Radish Media, Inc.*, No. 21-cv-4379, 2022 WL 2292768, at *4 (S.D.N.Y. June 24, 2022) (citing N.Y. C.P.L.R. § 213). "The money is due when the plaintiff has the legal right to demand payment." *Id.*; *see also Elie Int'l, Inc. v. Macy's W. Inc.*, 106 A.D.3d 442, 443, 965 N.Y.S.2d 52, 53 (1st Dep't 2013) ("In contract actions, a claim generally accrues at the time of the breach, and the statute of limitations is triggered when the plaintiff had the right to demand payment." (citations omitted)). In this case, Kaiurov alleges that Stefantsova owed him money when the real estate project was liquidated in 2012, but that she refused to pay at that time (although certain funds were returned years after the fact). *See* AC ¶ 260. That is when the alleged breach occurred, and that is when the statute of limitations began to run.[7] Any claims were therefore time-barred by 2018.

Because the alleged breach occurred more than six years before Plaintiffs initiated this action, the breach of contract claim must be dismissed as time-barred.

---

*Catucci*, 117 A.D.2d 892, 498 N.Y.S.2d 902, 905 (3d Dep't 1986)). As such, Count 14 is dismissed for failure to state a claim for relief.

[7] That Kaiurov elsewhere alleged inconsistently that he did not invest in the real estate project until 2013 does not change the analysis. It is well established that "the Court need not accept or attempt to reconcile inconsistent or contradictory allegations." *Redcell Corp. v. A.J. Trucco, Inc.*, No. 20-cv-18, 2022 WL 683007, at *8 (S.D.N.Y. Mar. 8, 2022). That is true even when considering a motion for default judgment. *See Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, No 00-cv-3613, 2004 WL 1943099, at *15 (S.D.N.Y. Aug. 27, 2004) (noting that a court may find a complaint is not well-pleaded for purposes of a default judgment when "allegations in the complaint are internally inconsistent" (citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971)).

Each of Kaiurov's other claims suffer the same fate, as none of them has a statute of limitations that would have continued to run after the time to bring a breach of contract claim had expired. Under New York law, the statute of limitations for fraud claims (Counts 9 and 13) is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered the fraud," *Zirvi v. Flatley*, 838 F. App'x 582, 586 (2d Cir. 2020) (citing N.Y. C.P.L.R. § 213(8)). Any fraud should have been discovered when the real estate project was sold and Stefantsova, without any seeming explanation, refused to pay Kaiurov the money he was owed. The statute of limitations for unjust enrichment claims seeking monetary damages is three years, *Lia v. Saporito*, 909 F. Supp. 2d 149, 167 (E.D.N.Y. 2012), and the statute of limitations for prima facie tort is also three years, *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 535 (2d Cir. 2009). Kaiurov's claims may all be closer to falling within the statute of limitations than Gorokhovsky's defamation claims, but they are nonetheless time-barred. When it comes to the statute of limitations, closeness is no consolation.

## CONCLUSION

For the reasons discussed herein, Plaintiffs' Motion for Default Judgment is DENIED and all claims are dismissed *sua sponte*. Plaintiffs shall have 30 days from the date of this Order to seek leave to amend the Amended Complaint. In the absence of any such request for leave to amend within the 30 days, the Court will close the case.

**SO ORDERED.**

**Date:   December 7, 2022**
       **New York, New York**              _____
                                                      **MARY KAY VYSKOCIL**
                                                      United States District Judge